UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DELORES REID, on behalf of herself
and all others similarly situated,          Case No. 1:16-cv-815

      Plaintiff,                  Judge Timothy S. Black

vs.

THE KROGER CO., *et al.*,

      Defendants.

**ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT (Doc. 44) and
DENYING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION (Doc. 34) AS MOOT**

This civil action is before the Court on the motion for summary judgment filed

by Defendants The Kroger Company and Kroger Limited Partnership I (collectively,

"Kroger") for summary judgment (Doc. 44) and the parties' responsive memoranda

(Docs. 51 and 53).

## I.      INTRODUCTION

**A.    Parties.**

Plaintiff Dolores Reid ("Ms. Reid") is, and at all relevant times was, a resident of

Newport News, Virginia. (Doc. 21 at ¶ 11).

Defendant The Kroger Company is an Ohio for-profit corporation headquartered

in Cincinnati, Ohio. (Doc. 21 at ¶ 12). Defendant Kroger Limited Partnership I ("LP I")

is an Ohio limited partnership headquartered, and with its principal place of business, in Cincinnati, Ohio. (*Id.* at ¶ 13). LP I is a subsidiary of The Kroger Company. (*Id.*)

B. **Undisputed Facts.**

On June 12, 2014, Ms. Reid submitted an on-line application ("Application") to work at Kroger's (specifically, LP I's) Yorktown, Virginia Store (No. 534) as a cashier. (Doc. 47 at ¶ 1).

LP I is comprised of six (6) divisions, one of which is the Mid-Atlantic Division. (Doc. 47 at ¶ 2). While the Mid-Atlantic Division is not a separate legal entity from LP I, the Division is operated by its own executive staff that possesses independent decision-making authority with respect to operating and hiring practices within its 121 stores. (*Id.*)[1]

In completing the Application, Ms. Reid self-disclosed that she had been convicted of a misdemeanor assault on June 11, 2013. (Doc. 47 at ¶ 3). Pertinent to this disclosure, the Application contained the following statement: "Note the existence of a criminal history will not automatically disqualify you from the job you were applying for." (*Id.*)

Following the Application's submission, Ms. Reid interviewed with the Yorktown, Virginia store's Administrative Assistant, Ms. Nancy Austin, who was involved in hiring

---

[1] In support of the assertion that the Mid-Atlantic Division is operated by its own executive staff that possesses independent decision-making authority with respect to operating and hiring practices within its 121 stores, Kroger cites to the affidavit of Keesha Burgess. (Doc. 44-1 at ¶ 3). Ms. Reid "disputes" this statement, but does not cite to any evidence in support of her position as required by this Court's Standing Order Governing Civil Motions for Summary Judgment.

at Store 534. (Doc. 47 at ¶ 4). During the interview with Ms. Austin, Ms. Reid self-disclosed that she had been convicted of an assault related to a domestic dispute. (*Id.*) Despite applying for a cashier position, Ms. Austin informed Ms. Reid she was considering her for a deli clerk position because there was a "need" at the store. (*Id.*) As a result, Ms. Austin also introduced Ms. Reid to the store's Deli Manager following her interview. (*Id.*)

Several days after the interview, Ms. Austin contacted Ms. Reid and offered her a position in the store's deli, contingent on passing a background check and drug screen. (*Id.* at ¶ 5). It was not Ms. Austin's decision whether or not Ms. Reid passed the requisite background check, and Ms. Austin did not know if Ms. Reid would pass in light of her disclosed assault. (*Id.*)

On June 20, 2014, Ms. Reid returned to the Yorktown Store where she provided a drug screen sample and executed paperwork authorizing Kroger to obtain her background check. (Doc. 47 at ¶ 6) As a result, LP I's Mid-Atlantic Division requested Ms. Reid's background report from General Information Services ("GIS"), a third-party consumer reporting agency that provides consumer reports to the Division. (*Id.*)

The Kroger Company has contracted with GIS to provide background checks upon request for certain affiliates and subsidiaries. (Doc. 47 at ¶ 8). As a subsidiary of The Kroger Company, LP I utilizes GIS's services to obtain background checks for some of its Divisions. (*Id.*)

In addition to providing background checks, GIS also assigns a preliminary grade to each applicant's background check based on Kroger's General Crime Matrix

("Matrix") depicting general hiring criteria.  (Doc. 47 at ¶ 9).  The Kroger Company

provided GIS with the Matrix and directed it on how to assign preliminary grades based

on its general hiring criteria.  (*Id.*)  In June 2014, the preliminary grades available for

assignment by GIS were, "clear for hire," "not clear for hire," or "no grade."

The Matrix GIS used to assign a preliminary grade in June 2014, is color coded.

(Doc. 47 at ¶ 10).  If an applicant's criminal conviction fell into a red zone, GIS

preliminarily assigned a grade of "not clear for hire."  (*Id.*)  In contrast, if an applicant's

conviction fell within a yellow zone, the Mid-Atlantic Division reviewed the file more

closely and made a decision based on the category of employment sought.  (*Id.*)  Finally,

if an applicant had no criminal history and thus fell into the green zone, GIS assigned a

grade of "clear for hire."  (*Id.*)

While it was not the Mid-Atlantic Division's general practice to further review

background check reports if the applicant's criminal conviction fell into the Matrix's red

zone, its adjudicators maintained the ability to review and alter any grade assigned by

GIS regardless of whether an applicant's criminal conviction fell into the red, yellow, or

green zone on the Matrix.  (Doc. 47 at ¶ 11).[2]

In the event GIS preliminarily graded an applicant as "clear for hire," no action

was necessary and the Mid-Atlantic Division extended the applicant a final offer of

---

[2] Ms. Reid argues "[t]here is no evidence that Kroger ever changed a grade in this manner" and "[t]he evidence shows that Kroger's adjudicators adhered strictly to the Matrix."  (Doc. 52 at ¶ 11).  However, in support of this fact, Kroger cites to the deposition of Erin Arlinghaus, the person responsible for managing Kroger's relationship with GIS, who testified that Kroger maintains discretion to depart from GIS's recommendation.  (Doc. 42 at 15-16; 21-23).  Reid has not cited to any evidence that contradicts this testimony as required by this Court's Standing Order Governing Civil Motions for Summary Judgment.

employment. (Doc. 47 at ¶ 12). Alternatively, in the event an applicant's conviction fell into a red or yellow category on the Matrix, GIS preliminarily marked the background check as "not clear for hire" in its internal system and electronically sent a notice to the Mid-Atlantic Division that it needed to review the background check. (*Id.*) An adjudicator at the Mid-Atlantic Division would then individually review the file and make a decision to either convert the grade to "clear for hire," or ratify the preliminary "not clear for hire" grade. (*Id.*)[3]

GIS initially completed Ms. Reid's background check on June 27, 2014 and transmitted the full report to Ms. Keesha Burgess ("Ms. Burgess") who was responsible for reviewing and adjudicating background checks for the Mid-Atlantic Division's hourly employee applicants. (Doc. 47 at ¶ 14). In the report transmitted to Ms. Burgess, GIS coded Ms. Reid's report as "Not Clear For Hire" because its criminal history search identified that she had previously been convicted of a felony for "Assault/Corporal Injury" ("Felony Conviction") on June 11, 2013. (*Id.*)

According to Kroger's Matrix, Ms. Reid's Felony Conviction fell into a red category. (Doc. 47 at ¶ 15). GIS sent the report to the Mid-Atlantic Division to review Ms. Reid's background check and decide whether or not to either clear her for hire or ratify GIS's preliminary grade. (*Id.*)

On June 27, 2014, Ms. Burgess reviewed Ms. Reid's full background check report and ratified GIS's preliminary grade of "not clear for hire" in the GIS system. (Doc. 47

---

[3] Ms. Reid "disputes" this paragraph for the same reasons explained in footnote 2, *supra*, and her argument fails for the reason explained there.

at ¶ 16).  Ms. Burgess notified GIS of her ratification of  "Not Clear For Hire," which triggered GIS to send Ms. Reid a pre-adverse action letter ("Pre-Adverse Action Letter") and associated documents on behalf of Kroger.  (*Id.*)

The grade assigned by Ms. Burgess was only a preliminary grade.  (Doc. 47 at ¶ 17).  Ms. Reid had the opportunity to dispute the information contained in the GIS report and a successful dispute could warrant the assignment of a new grade.  (*Id.*) [4]

Following Ms. Burgess's ratification of GIS's preliminary grade, Ms. Reid received the Pre-Adverse Action Letter generated on June 30, 2014.  (Doc. 47 at ¶ 19). In addition to the Pre-Adverse Action Letter, she simultaneously received a copy of her initial background check ("Initial Background Check") reflecting a preliminary grade of "Pending/Not Clear for Hire," a summary of her rights under the Fair Credit Reporting Act ("FCRA"), and a Dispute Request Form.  (*Id.*)

Specifically, the Pre-Adverse Action Letter informed Ms. Reid that, "The Kroger Company has or will be completing their review of your application within the next few days, and may take action based on the enclosed report."  (Doc. 47 at ¶ 20).  The Pre-Adverse Action Letter further informed Ms. Reid that "You have the right to dispute the accuracy or completeness of any information contained in the report by contacting GIS directly."  (*Id.*)

---

[4] In support of this paragraph, Kroger cites to the deposition of Ms. Burgess, who unequivocally testified that the grade she ratified on June 27, 2014 was "preliminary" and subject to Ms. Reid's opportunity to dispute the information in GIS's report. (Doc. 40 at ¶ 77).  Ms. Reid argues that Ms. Burgess's ratification was a "final" decision, not "preliminary," but does not cite to any affirmative evidence to dispute Ms. Burgess's testimony as required by this Court's Standing Order Governing Civil Motions for Summary Judgment.  Instead, Ms. Reid cites to arguments made in her response to the motion for summary judgment.  (Doc. 52 at ¶ 17).  Those arguments fail for the reasons explained *infra*.

Immediately upon receiving the aforementioned documents from GIS on June 30, 2014, Ms. Reid contacted Ms. Austin and informed her that her conviction was not a felony. (Doc. 47 at ¶ 21). In response to Ms. Reid's statement, Ms. Austin stated "There's nothing I can do." (*Id.*) Consistent with Ms. Reid's characterization of the conversation, Ms. Austin was not in a position to make any decisions regarding the grading of Ms. Reid's background check. (*Id.*)

At a time when Ms. Austin was unable to assist her, Ms. Reid decided to use the procedural mechanism identified in the Pre-Adverse Action Letter to dispute inaccurate information; *i.e.*, contact GIS directly. (Doc. 47 at ¶ 24). Using the information provided within the Pre-Adverse Action Letter, Ms. Reid called GIS on July 3, 2014, and telephonically submitted a dispute related to the background check. (*Id.*) Specifically, Ms. Reid informed GIS that her "Felony Conviction" was actually a misdemeanor. (*Id.*)

Four days later, on July 7, 2014, Ms. Reid submitted the formal Dispute Request Form provided with the Pre-Adverse Action Letter on June 30, 2014. (Doc. 47 at ¶ 25). As a result of Ms. Reid's submission, GIS halted sending an Adverse Action letter formally denying her employment. (*Id.*)

Ms. Reid then requested that GIS reinvestigate her criminal history. (Doc. 47 at ¶ 26). GIS subsequently contacted Hampton County, Virginia to comply with Ms. Reid's request. Through its reinvestigation, GIS determined that Ms. Reid's Felony Conviction for assault on a Police Officer had been pled down to a misdemeanor. (*Id.*) Because it had been misreported to Kroger, GIS updated its files on July 9, 2014, and notified Ms. Burgess at the Mid-Atlantic Division of the modification in assault classification. (*Id.*)

The day after GIS notified LP I's Mid-Atlantic Division of the update to Ms. Reid's report, GIS sent Ms. Reid an amended copy of her background check along with a summary of its reinvestigation process. (Doc. 47 at ¶ 27). Thereafter, on July 10, 2014, GIS resumed printing an Adverse Action Notice given that the dispute process was complete. (*Id.*) Based on Kroger's Matrix, Ms. Reid was still ineligible for hire. (*Id.*)

Ms. Reid agrees that, with the updated background check provided on July 10, 2014, GIS accurately reflected her June 11, 2013 conviction as a misdemeanor rather than a felony. (Doc. 47 at ¶ 28). Unlike the Initial Background Check report that listed Ms. Reid's grade as "Pending/Not Clear for Hire," the Final Background Check report, post-reinvestigation, listed Ms. Reid's grade as "Not Clear for Hire." (*Id.*)

Even after Ms. Reid's Felony Conviction was changed to a misdemeanor, because of the temporal proximity of her crime (approximately one year) to her Application, Ms. Reid still remained ineligible for employment pursuant to Kroger's hiring criteria. (Doc. 47 at ¶ 29).

## II.    STANDARD

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be

construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## III.    ANALYSIS

### A.    Kroger is entitled to summary judgment on Ms. Reid's FCRA claim.

The Complaint alleges that Kroger violated The Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"), by not providing Ms. Reid with information required by the FCRA prior to revoking her conditional offer of employment. (Doc. 22 at ¶¶ 35-45). The FCRA states, in relevant part:

> [i]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such action shall provide to the consumer to whom the report relates (A) a copy of the report; and (B) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission[]

15 U.S.C. § 1681b(B)(3). Both Defendants are "persons" and the Initial Background Check provided by GIS is a "consumer report" as defined by the FCRA. 15 U.S.C. § 1681a(a), (d).

Ms. Reid argues that Kroger violated the FCRA by taking an "adverse action"—revoking her conditional offer of employment—prior to providing her a copy of the Initial Background Check and a description of her FCRA rights. (Doc. 22 at ¶¶ 35-45). Specifically, Ms. Reid argues that her offer was actually revoked on June 27, 2014, when

Ms. Burgess ratified GIS's preliminary grade of "Not Clear for Hire." (*Id.*; Doc. 51 at 3). Accordingly, Ms. Reid claims she had already lost her employment opportunity at the time Kroger sent the Pre-Adverse Action Letter. (Doc. 51 at 3-4).

Kroger argues it is entitled to summary judgment because the initial grade from GIS that was subsequently approved by Ms. Burgess was a <u>preliminary</u> grade, and Ms. Reid remained eligible for employment at Kroger at the time Kroger provided her the Pre-Adverse Action Letter, a copy of her FCRA rights, a copy of the Initial Background Check, and an opportunity to dispute the contents of the Initial Background Check. (Doc. 44 at 13-17). The Court agrees with Kroger.

The FCRA defines an "adverse action" as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. § 1681(k)(1)(B)(ii). Accordingly, an adverse action occurs when an employer <u>revokes</u> a conditional offer of employment to a prospective employee. *See Cox v. TeleTech@Home, Inc.*, Case No. 1:14-cv-993, 2015 U.S. Dist. LEXIS 14000, at * 11 (N.D. Ohio Feb. 5, 2015) (emphasis added).

The FCRA is not violated until an adverse employment decision "is communicated or actually takes effect, and an [employer] has until that time to take the necessary steps to comply with the FCRA's requirements." *Cox*, 2015 U.S. Dist. LEXIS 14000, at ** 11-12 (citations omitted); *Obabueki v. International Business Machines Corp.*, 145 F. Supp. 2d 371, 391-92 (S.D. N.Y. 2001).

As the Northern District of Ohio explained:

> An adverse action does not occur where the employer <u>merely alerts the prospective employee that it is considering revoking the offer</u>. This would be exactly the process encouraged by the FCRA; the employer tells the prospective employee there is an issue with his consumer report that, if true, would disqualify him from employment, and allows the prospective employee a reasonable time to contest and correct the report before making a final decision not to hire him.

*Cox*, 2015 U.S. Dist. LEXIS 14000, at * 12 (emphasis added).

Here, Kroger's offer of employment to Ms. Reid was "contingent on [Ms. Reid] passing a background check and drug screen." (Doc. 47 at ¶ 5). On June 27, 2017, GIS transmitted the Initial Background Check, which erroneously included the Felony Conviction, to Kroger. (*Id.* at ¶ 14). Kroger reviewed the Initial Background Check and ratified GIS's preliminary grade of "Not Clear for Hire." (*Id.* at ¶ 16).

GIS then, on Kroger's behalf, sent Ms. Reid (1) copy of the Initial Background Check, (2) a summary of her FCRA Rights, (3) a Dispute Request Form, and (4) the Pre-Adverse Action Letter, which informed Ms. Reid that Kroger "<u>may</u> take action based on the [Initial Background Check]" and notified her that she had the right to dispute any information by contacting GIS directly. (Doc. 47 at ¶¶ 19-20) (emphasis added).

Precisely as contemplated by the FCRA, Ms. Reid disputed the contents of the Initial Background Check with GIS, who discovered the Felony Conviction had actually been pled down to a misdemeanor and updated the report. (Doc. 47 at ¶ 26). GIS sent the updated report, which indicated that Ms. Reid was still ineligible for hire, to Kroger and Ms. Reid. (*Id.* at ¶¶ 26-29). Kroger unequivocally maintains that its preliminary grade was subject to change had Ms. Reid successfully disputed the contents of the Initial

Background Check and the updated information made her eligible for employment consistent with the Matrix. (Doc. 44-1 at ¶ 7). Ms. Reid admits that, even after the report was corrected, she was not eligible for hire at Kroger. (Doc. 48 at ¶ 52).

In these circumstances—where the evidence is undisputed that Kroger's initial grade on June 27, 2014, of "Not Clear for Hire" was <u>preliminary</u> and subject to change in the event of a successful dispute—and there is no evidence that Kroger's revocation of Ms. Reid's conditional offer of employment was communicated to Ms. Reid or took effect prior to her being provided with a copy of the Initial Background Report and a summary of her FCRA rights, there is no question of fact as to whether Kroger took an "adverse action" prior to complying with the FCRA, and Kroger is entitled to judgment as a matter of law.

Ms. Reid argues that she was not provided a "meaningful opportunity" to dispute the Initial Background Check. (Doc. 51 at 5). She asserts two arguments in support of this contention; both lack merit.

First, Ms. Reid argues that, immediately after she received the Initial Background Check, she called Ms. Austin to challenge her report, and Ms. Austin informed her there was "nothing [Ms. Austin] could do." (Doc. 51 at 6; Doc. 30 at 30). Ms. Reid argues this statement demonstrates that her employment opportunity was lost as of June 27, 2017, when Ms. Burgess ratified GIS's initial classification of "Not Clear for Hire." (Doc. 51 at 6-7).

This argument fails for two reasons. First, Ms. Austin was right—there was nothing she could do, because she was not in a position to make any decisions regarding

the grading of Ms. Reid's background check. (Doc. 47 at ¶ 21). While the Court is required to make all <u>reasonable</u> inferences in favor of the non-movant, it is <u>unreasonable</u> to infer that this out-of-context, factually accurate statement from Ms. Austin actually meant something completely different—that Ms. Reid's opportunity was lost forever—in light of the undisputed evidence that her job offer was conditioned upon passing a background check and that she remained eligible for employment while she disputed the Initial Background Check. (Doc. 44-1 at ¶ 7); *see also Pitcher v. Waldman*, Case No. 1:11-cv-148, 2012 U.S. Dist. LEXIS 152087, at * 12 (S.D. Ohio Oct. 23, 2012) ("[a]lthough reasonable inferences must be draw in favor of the opposing party, inferences are not to be drawn out of thin air."). Second, the FCRA does not require users of consumer reports, like Kroger, to make individual employees, like Ms. Austin, available to assist applicants, like Ms. Reid, with their disputes. The FCRA required Kroger to provide Ms. Reid a copy of the Initial Background Check and a summary of her FCRA rights prior to concluding she was ineligible for employment; the undisputed evidence is that it did.

Ms. Reid argues further that Kroger's "preliminary grade" was itself an "adverse action" because Kroger's adjudication process is "illusory." (Doc. 51 at 7). Specifically, Ms. Reid argues that Kroger does not "hold" jobs for applicants while they dispute their reports, and speculates that her job as a deli clerk would not have been available to her had the revised background check resulted in her grade being changed to eligible for hire (which, she admits, it did not). (*Id.* at 7-8).

This argument fails for three reasons.  First, the evidence is that Ms. Reid's job offer was conditioned upon her passing a background check, and she remained under consideration for employment pending the resolution of her dispute.  (Doc. 44-1 at ¶ 7). Second, while Ms. Reid argues that Kroger does not "hold" positions open, she has not pointed to any evidence that <u>her</u> opportunity was "lost;" *i.e.*, that the job for which she was conditionally offered employment was filled, or otherwise became unavailable, while she disputed the contents of the Initial Background Check.[5]  Third—and relatedly—Ms. Reid *cannot* show that her opportunity was "lost" because, as she admits, <u>she remained ineligible for hire at Kroger even after she successfully disputed the information in the Initial Background Check</u>.  Ms. Reid's hypothetical argument that <u>if</u> she passed the background check, Kroger would not have hired her, is not supported by any evidence and cannot create an issue of fact precluding summary judgment.

Accordingly, Kroger's motion for summary judgment (Doc. 44) is **GRANTED**.

### B.  Ms. Reid's motion to certify class is denied as moot.

Also before the Court is Ms. Reid's motion to certify class pursuant to Federal Rule of Civil Procedure 23.  (Doc. 34).  The motion seeks to certify a class of similarly situated individuals to present FCRA claims against Kroger.  (*Id.*)  Because the Court has granted summary judgment to Kroger on Ms. Reid's FCRA claim, the motion to certify

---

[5] To the extent Ms. Reid suggests Kroger has a policy of moving on to the next applicant after entering a preliminary grade of "Not Clear For Hire," (Doc. 51 at 9), that argument fails because, initially, there is no evidence to indicate that is what happened in this (or any) situation, and further, the undisputed evidence is that of Mid-Atlantic Division applicants between June 2014 and May 2015 who had their preliminary grade changed from "Not Clear For Hire" to "Clear For Hire" using the dispute process, at least 70% ultimately became employed in the Division.  (Doc. 53-4 at ¶ 4).  That statistic does not permit the inference that Kroger's dispute process is "illusory."

class (Doc. 34) is **DENIED AS MOOT**. *See Johnson v. Greyhound Lines, Inc.*, Case No. 08-460C, 2009 U.S. Dist. LEXIS 56634, * 20 (W.D. Ky. Jul. 1, 2009) ("Because the court has granted summary judgment for the defendants, the plaintiff has no claims upon which to base his . . . motion to certify class.").

## IV. CONCLUSION

For the foregoing reasons:

1.  The motion of Defendants The Kroger Company and Kroger Limited Partnership I for summary judgment (Doc. 44) is **GRANTED**;

2.  Plaintiff's motion for class certification (Doc. 34) is **DENIED AS MOOT**; and

3.  The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED**.

Date:  <u>March 15, 2018</u>

Timothy S. Black
United States District Judge